**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. ROSEMARIE A. DOW,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 21-1197 (JDB)** |
| **HC2, INC.,** | |
| **and** | |
| **PAE LABAT-ANDERSON, LLC,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Relator Rosemarie Dow wishes to pursue this action against two litigation support service companies under the False Claims Act. But False Claims Act relators must have counsel, and in the nine months since Dow's original counsel withdrew, she has not replaced them. The Court therefore dismisses this case for failure to prosecute. The Court also resolves Dow's request to unseal the remainder of the record—granting in part and denying in part her motion.

**BACKGROUND**

Dow and other relators brought this suit against two litigation support service companies on behalf of the United States, alleging violations of the False Claims Act. Compl. [ECF No. 3]. After the government declined to intervene, the Court unsealed the complaint and Dow's counsel withdrew. Gov't Notice of Nonintervention [ECF No. 22]; Order Unsealing Compl. [ECF No. 24]; Mot. to Withdraw [ECF No. 25]. Dow nevertheless sought to continue litigating this matter and attempted to enter an appearance on behalf of herself and the United States. Dow's Notice of Appearance [ECF No. 28]. But the Court held that she could not proceed pro se, citing circuit

1

precedent and concerns about adequate representation of the United States. United States ex rel. Dow v. HC2, Inc. (Dow I), Civ. A. No. 21-1197, 2025 WL 3012714, at *1–2 (D.D.C. Oct. 27, 2025) (citing United States ex rel. Feliciano v. Ardoin, 127 F.4th 382, 383–84 (D.C. Cir. 2025) (per curiam), cert. denied sub nom. Feliciano v. Landry, 145 S. Ct. 2799 (2025)).

The Court gave Dow a month to engage new counsel and warned that if she did not do so, it would seek the government's consent to dismiss the suit. Id. at *3. When Dow moved for an enlargement of time, the Court granted her motion and extended her deadline to obtain counsel by seven weeks. Min. Order (Dec. 5, 2025). Once that extended deadline was up, Dow moved for a second enlargement of time, which Defendant HC2, Inc. opposed. Pl.'s 2d Ext. Mot. [ECF No. 47]; Def.'s 1st Ext. Opp'n [ECF No. 48]. The Court granted Dow an additional six weeks to hire counsel but warned that, barring extraordinary circumstances, no further extensions would be granted. See Min. Order (Jan. 23, 2026).

Dow nonetheless moved for a third extension of time to obtain counsel, which HC2, Inc. again opposed. Pl.'s 3d Ext. Mot. [ECF No. 50]; Def.'s 2d Ext. Opp'n [ECF No. 51]. The Court denied Dow's motion, finding that she had not shown good cause to justify a third extension. United States ex rel. Dow v. HC2, Inc. (Dow II), Civ. A. No. 21-1197, 2026 WL 657173, at *2 (D.D.C. Mar. 9, 2026). The government then consented to dismiss the suit. Gov't's Consent [ECF No. 53].

Recognizing that time had run short, Dow filed a motion to unseal the remainder of the record—particularly the government's extension motions and any exhibits to the complaint. Pl.'s 2d Mot. to Unseal ("Pl.'s Mot.") [ECF No. 54]. The government opposes Dow's motion as to its extension memoranda, while defendant HC2, Inc. opposes her motion generally. Gov't's Renewed Opp'n [ECF No. 55]; Gov't's Partial Opp'n [ECF No. 33]; HC2, Inc.'s Opp'n [ECF No. 56].

The Court now considers whether this action should be dismissed for failure to prosecute and addresses Dow's motion to unseal the remainder of the record.

## DISCUSSION

### I.      Dismissal for Failure to Prosecute

"District courts have inherent power to dismiss a case <u>sua sponte</u> for a plaintiff's failure to prosecute or otherwise comply with a court order." <u>Peterson v. Archstone Cmtys. LLC</u>, 637 F.3d 416, 418 (D.C. Cir. 2011) (citing <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 629 (1962)); <u>see also</u> D.D.C. Loc. Civ. R. 83.23 (providing that "[a] dismissal for failure to prosecute may be ordered . . . upon the Court's own motion"). Because False Claims Act (FCA) relators may not proceed pro se, failure to obtain counsel constitutes failure to prosecute, and courts may dismiss FCA actions when relators fail to hire counsel. <u>See</u> <u>Wojcicki v. SCANA/SCE&G</u>, 947 F.3d 240, 241 (4th Cir. 2020) (affirming the district court's dismissal of an FCA suit for failure to prosecute, where the relator did not comply with the court's order to hire counsel); <u>see also</u> <u>Ardoin</u>, 127 F.4th at 383 (summarily affirming the district court's dismissal of an FCA action because the relator was proceeding pro se).

Of course, dismissal for failure to prosecute should not be a court's first response to delays created by a plaintiff. Before dismissing a suit for failure to prosecute, courts must try "less dire" alternatives without success. <u>Trakas v. Quality Brands, Inc.</u>, 759 F.2d 185, 186–87 (D.C. Cir. 1985). For instance, courts must warn plaintiffs of the consequences of failing to act, <u>Noble v. USPS</u>, 71 F. App'x 69, 69 (D.C. Cir. 2003), and grant them "ample opportunity to comply," <u>Trakas</u>, 759 F.2d at 187 (citation modified). But once a district court exhausts more lenient measures, it may dismiss a case for failure to prosecute so long as it explains why dismissal is necessary under the circumstances. <u>Peterson</u>, 637 F.3d at 418.

This Court does not employ the harsh sanction of sua sponte dismissal lightly. Dow's counsel withdrew on July 16, 2025. See Min. Order (July 16, 2025) (granting motion to withdraw). In the nine intervening months, the Court granted Dow two lengthy extensions of time to hire counsel. Min. Order (Dec. 5, 2025); Min. Order (Jan. 23, 2026). And when the Court granted the second extension, it warned Dow that, absent extraordinary circumstances, it would not grant a third. See Min. Order (Jan. 23, 2026). The Court also advised Dow that if she did not obtain counsel, it would seek the government's permission to dismiss the case. Dow I, 2025 WL 3012714, at *3. When Dow nevertheless sought a third extension, she offered no evidence that more time would materially change her circumstances and enable her to obtain counsel, so the Court denied her motion. Dow II, 2026 WL 657173, at *1. Put plainly, the Court has exhausted less dire measures.

Because Dow lacks counsel, this case has been stalled for more than nine months—and there is little to no prospect that it will restart. Federal courts throughout the country have found dismissal necessary in comparable circumstances. See Hutchins v. DynCorp, Int'l, Inc., Civ. A. No. 15-355, 2020 WL 13610742, at *1 (D.D.C. Mar. 12, 2020) (dismissing an FCA complaint where the relators did not obtain new counsel within six months after their counsel withdrew); Wojcicki, 947 F.3d at 241–42, 246 (affirming the district court's dismissal of a relator's claims for failure to prosecute after one warning to obtain counsel and one extension of time to do so); United States v. Cincinnati Ins., 2021 U.S. Dist. LEXIS 20473, *5 (S.D. Fla. Feb. 1, 2021) (dismissing an FCA complaint where the relator failed to hire counsel despite court warnings and two extensions of time); Chailla v. Navient Dep't of Educ., 791 F. App'x 226, 229 (2d Cir. 2019) (affirming the district court's dismissal of a relator's claims after the relator "failed to retain counsel, despite being granted ample opportunity to do so"), cert. denied, 589 U.S. 1281 (2020).

This Court agrees that dismissal is necessary and appropriate here.  And the United States has consented, explaining that "a dismissal is commensurate with the public interest and that the matter does not warrant the continued expenditure of government resources to pursue."  Gov't's Consent at 1.[1]  Accordingly, the Court dismisses Dow's complaint without prejudice.

## II.      Dow's Motion to Unseal

Before closing the book on this case, the Court must address one final chapter.  After the government consented to dismissal, Dow moved to unseal the remainer of the record—particularly (1) the government's motions and memoranda for extensions of time to decide whether to intervene, and (2) any exhibits attached to the complaint.  Pl.'s Mot. at 3.  Defendant HC2, Inc. opposes unsealing either, HC2, Inc. Opp'n at 1, while the government only opposes unsealing its extension motions and memoranda, Gov't's Partial Opp'n at 1; Gov't's Renewed Opp'n.  The Court grants in part and denies in part Dow's motion to unseal the record.

### A. Legal Standard

To ensure the integrity of judicial proceedings, "there is a 'strong presumption in favor of public access'" to judicial records.  Metlife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting United States v. Hubbard, 650 F.2d 293, 317 (D.C. Cir. 1980)).  The presumption may be overcome, however, by an act of Congress or countervailing interests.  Id. at 665, 669; In re L.A. Times Commc'ns LLC, 28 F.4th 292, 297 (D.C. Cir. 2022).

---

[1] Because relators assert claims on behalf of the United States, the False Claims Act requires courts to seek the government's written consent before dismissing claims under the Act.  31 U.S.C. § 3730(b)(1).  To avoid separation of powers concerns, judges have construed this provision to apply only to voluntary dismissals.  See United States ex rel. Landis v. Tailwind Sports Corp., 98 F. Supp. 3d 8, 10 (D.D.C. 2015) (collecting cases).  But these cases holding that the FCA's consent provision did not apply all involved merits or jurisdictional dismissals.  So whether an involuntary dismissal for failure to prosecute requires government consent is unclear.  Regardless, the United States provided consent here.

Motions to seal or unseal thus trigger a three-phase inquiry. First, the court considers whether the records at issue are "judicial records" to which the presumption in favor of public access applies. See Metlife, Inc., 865 F.3d at 666. If so, the court next assesses whether a federal statute dictates that the records shall remain sealed, rebutting the presumption. See id. at 669 (explaining that the presumption "must yield" to acts of Congress expressly providing for the sealing of records). Finally, if Congress has not spoken, the court must weigh the interests in favor of and against unsealing the records. United States ex rel. Kammarayil v. Sterling Operations, Inc., Civ. A. No. 15-1699, 2018 WL 6839747, at *2 (D.D.C. Dec. 31, 2018).

The D.C. Circuit's decision in United States v. Hubbard supplies the test for this final phase, directing courts to consider:

(1) the need for public access to the documents at issue;
(2) the extent of previous public access to the documents;
(3) the fact that someone has objected to disclosure, and the identity of that person;
(4) the strength of any property and privacy interests asserted;
(5) the possibility of prejudice to those opposing disclosure; and
(6) the purposes for which the documents were introduced during the judicial proceedings.

In re L.A. Times Commc'ns LLC, 28 F.4th at 297 (quoting Metlife, Inc, 865 F.3d at 665) (citation modified); see also Hubbard, 650 F.2d at 317–22. Ultimately, judicial records may be kept under seal only if, after weighing the Hubbard factors, the court "concludes that justice so requires." Metlife, Inc., 865 F.3d at 666 (quoting In re Nat'l Broad. Co., 653 F.2d 609, 613 (D.C. Cir. 1981)).

**B. Government Extension Motions and Memoranda**

Throughout the life of this litigation, the government filed nine motions for extensions of time to investigate the complaint and decide whether to intervene.[2] Dow now seeks to unseal those

---

[2] These motions include ECF Nos. 4, 5, 7, 10, 12, 14, 16, 18, 20 ("Gov't's Ext. Mots.").

6

motions and their supporting memoranda.  Pl.'s Mot. at 15.  No party disputes that the motions

and memoranda—which the Court ruled on—are judicial records.  And while the False Claims

Act provides for the sealing and unsealing of relators' complaints, no statute establishes what ought

to happen to other filings.  See United States ex rel. Kammarayil, 2018 WL 6839747, at *3

(construing 31 U.S.C. § 3730(b)(2)–(3)); see also Gov't's Partial Opp'n at 5 (acknowledging that

the FCA does not expressly address whether the government's extension motions and memoranda

should remain sealed).  The presumption of public access therefore applies, and the Court proceeds

to phase three of its analysis.

The court begins with the government's objections to Dow's motion to unseal,[3] which

emphasize Hubbard factors two, three, four, and five.  The government contends that unsealing its

extension motions and memoranda would reveal information about its "investigatory techniques,

decision-making processes, and reasoning" and prejudice its ability to "ferret[] out and prosecut[e]

fraud" in future cases.  Gov't's Partial Opp'n at 6–7.  After reviewing the extension motions and

memoranda in camera, the Court is unpersuaded by the government's assertions.  True, these

records have not previously been made public.  Yet as the government concedes, the motions and

memoranda tell only "a generalized" story.  Id. at 6.  They recount allegations in the complaint,

which the Court has already unsealed, and discuss the government's investigation at a high level

of generality.  At their most specific, the memoranda discuss interviewing "pertinent" witnesses

but not who those witnesses were or what they asked them.  See, e.g., Gov't's 2d Ext. Mot. [ECF

No. 5] at 5; Gov't's 3d Ext. Mot. [ECF No. 7] at 5.  That the government interviews pertinent

witnesses when it investigates fraud allegations is hardly sensitive, prejudicial information.

---

[3] HC2, Inc. agrees with the government's arguments against unsealing the extension motions and memoranda but raises no objections of its own.  See HC2, Inc. Opp'n at 1.

Perhaps recognizing its minimal interest in keeping the extension motions and memoranda sealed in this case, the government also raises a second objection. It argues that "[e]ven if this specific case did not involve the most highly sensitive investigative techniques," unsealing its filings will chill the government's candor in future cases. Gov't's Partial Opp'n at 10. But as another judge in this district observed, "[a] wide-ranging middle ground lays between, on the one hand, an insufficient showing for an extension of time, and on the other hand, a showing so comprehensive and detailed that it prejudices future government investigations if unsealed." United States ex rel. Kammarayil, 2018 WL 6839747, at *5. The government thus has "ample berth" to obtain extensions without disclosing sensitive information. Id.

Moreover, in the unlikely event that sensitive disclosures were to become necessary, there is no reason to believe that granting Dow's motion to unseal the government's extension motions and memoranda in this case would require unsealing records containing "highly sensitive investigative techniques" in a future case. The core of courts' unsealing analyses is a context-specific six-factor balancing test that considers all of the circumstances, including governmental interests in keeping the specific records under seal. So it suffices to say that a motion to unseal memoranda revealing secret government investigative techniques would present a very different question than Dow's motion does today.

In short, while the government's objection to unsealing the records and the records' current nonpublic status (Hubbard factors two and three) weigh against granting Dow's motion to unseal, the bases for the government's objections are weak. The government has few privacy interests in the records and unsealing them will not prejudice it (Hubbard factors four and five).

Set against the government's weak interests in maintaining the seal is the public's "vital" interest in accessing records in a case where it is a party in interest (Hubbard factor one). United

States v. ISS Marine Servs., Inc., 905 F. Supp. 2d 121, 140 (D.D.C. 2012); see also U.S. ex rel. Schweizer v. Oce, N.V., 577 F. Supp. 2d 169, 172 (D.D.C. 2008) (discussing the public's abstract interest in access to judicial records in FCA cases).  It is a "well-established principle that in cases where the government is a party the appropriateness of making court files accessible is enhanced." United States v. Thomas, 840 F. Supp. 2d 1, 4 (D.D.C. 2011) (citation modified).

Dow also asserts an individual interest in accessing the government's extension motions and memoranda: her pending appeal before the Merit Systems Protection Board.  She argues that the government's motions and memoranda will provide insight into the timing of DOJ witness interviews, and whether any of these interviews could have alerted her bosses to her FCA complaint and ultimately led to her non-selection for a full-time attorney position.  See Pl.'s Mot. at 29–30.  Taking together Dow's individual interest in accessing the extension motions and memoranda, and the public's broader interest in the records, Hubbard factor one weighs heavily in favor of lifting the seal.

Finally, Hubbard's sixth factor "focuses on the purpose for which the sealed materials were introduced, where materials more central to the litigation and actually relied upon by the judge carry a stronger presumption of availability to the public." United States ex rel. Kammarayil, 2018 WL 6839747, at *7.  Here, the extension motions and memoranda were not central to the litigation, but the Court relied on them to render decisions, so the Court finds this last factor to be neutral.

Weighing all the Hubbard factors, the Court concludes that the government's weak interests in preventing disclosure of its extension motions and memoranda cannot overcome the presumption of public access—a presumption bolstered by the public's status as a party of interest in this case and Dow's individual interest in accessing the records.  The Court therefore grants

9

Dow's motion to unseal the extension motions and memoranda. And for the same reasons, the Court will also unseal its orders granting the government's extension motions.[4]

### C. HC2, Inc.'s Subcontract & PAE-Labat's Articles of Incorporation

Next, Dow asks the Court to unseal all exhibits to the complaint, which she alleges[5] include a prime contract between DOJ and defendant PAE-Labat Anderson, LLC, a subcontract between PAE-Labat Anderson and HC2, Inc., as well as job advertisements, paystubs, and other documents. Pl.'s Mot. at 12–13, 19–20. There is only one exhibit attached to the complaint in this case, a Civil Cover Sheet that the Court unsealed when it unsealed the complaint. Civil Cover Sheet [ECF No. 3-1]. But there are two sealed exhibits attached to relators' motion to seal the case and referenced in the complaint: HC2, Inc.'s Blanket Subcontract Agreement and PAE Labat-Anderson's Articles of Incorporation. See ECF Nos. 1-1, 1-2. The Court considers whether each record should be unsealed.

#### i.      HC2, Inc.'s Blanket Subcontract Agreement

HC2, Inc. opposes Dow's motion to unseal its subcontract, contending that the contract is not a judicial record to which the presumption of public access applies, and that in any event, the Hubbard factors counsel against granting Dow's motion. HC2, Inc. Opp'n at 1–2. The Court finds that the subcontract is a judicial record but nevertheless agrees that the Hubbard factors weigh against granting Dow's motion to unseal it.

To determine whether a record is a judicial record, courts must look to the role that the record plays. Metlife, Inc., 865 F.3d at 667. Filings that "play a central role in the adjudicatory

_____

[4] Those orders include ECF Nos. 6, 8, 11, 13, 15, 17, 19, 21 and the Court's July 7, 2021, Minute Order.

[5] Because Dow does not have counsel, she cannot view sealed docket entries in this case to verify what those entries contain. The Court is unsure, however, why she is unable to obtain the exhibits referenced in her complaint from her prior counsel.

process" are judicial records, id., as are documents intended to influence judicial decision-making, In re L.A. Times Commc'ns LLC, 28 F.4th at 296. This is the case regardless of whether the record's contents are "specifically referred to or examined upon during the course" of the litigation. Metlife, Inc., 865 F.3d at 666–67 (citation modified); but see SEC v. Am. Int'l Grp., 712 F.3d 1, 3–4 (D.C. Cir. 2013) (defining judicial records to include only records the court relied on or made decisions about). Conversely, documents not submitted to the court for adjudication—like a plea agreement withdrawn before the court accepted it or a report created pursuant to a consent decree—are not judicial records, because judicial records "assume[] a judicial decision." Am. Int'l Grp., 712 F.3d at 3 (quoting United States v. El-Sayegh, 131 F.3d 158, 162 (D.C. Cir. 1997)).

Relators filed the HC2, Inc. subcontract with the Court to bolster their complaint's allegations, and therefore to influence judicial decisionmaking on the merits of their claims. See Compl. ¶¶ 55–56 (citing the subcontract in support of the complaint's fraud allegations). True, this Court will not reach the merits of the complaint, and instead dismisses the case for failure to prosecute. But contrary to HC2, Inc.'s protestations, the D.C. Circuit has made clear in its recent precedent that what defines a judicial record is a party's intent when filing the record. See, e.g., In re L.A. Times Commc'ns LLC, 28 F.4th at 296; Cable News Network, Inc. v. FBI, 984 F.3d 114, 118 (D.C. Cir. 2021); Metlife, Inc., 865 F.3d at 666–67. Here, relators filed the subcontract with the Court intending to influence the court's decisionmaking. That was sufficient to render the subcontract a judicial record. And because no federal statute addresses whether filings other than the complaint should remain sealed after the government declines to intervene in an FCA action, the Court proceeds to weigh the Hubbard factors.

In its opposition to Dow's motion to unseal, HC2, Inc. asserts that Hubbard factors two through six weigh against unsealing its subcontract. HC2, Inc. underscores that the subcontract

11

has never been publicly available (factor two), it has objected to the subcontract's disclosure (factor three), the subcontract contains proprietary information that, if disclosed, could aid its competitors and prejudice it in future bids (factors four and five), and the subcontract is not germane to the Court's resolution of the litigation (factor six). See HC2, Inc. Opp'n at 10–12.

The Court agrees that factors two, three, four, and five counsel against unsealing the subcontract. Indeed, Hubbard itself emphasizes that courts may keep "business information that might harm a litigant's competitive standing" under seal. 650 F.2d at 315 (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)). But the Court again finds Hubbard factor six—the purpose for which the document was introduced—to be neutral. While the subcontract is central to Dow's allegations, the Court did not reach the merits of those allegations, so the subcontract's purpose counsels neither for nor against unsealing.

Turning, at last, to Hubbard's first factor—the need for public access to the subcontract—the Court again recognizes the public's strong interest in access to judicial records filed in False Claims Act cases. But the Court also observes that Dow has no individualized interest in access to the subcontract. And while no prejudice accompanies disclosure of the government's extension motions and memoranda, HC2, Inc. has plausibly asserted that disclosure of its confidential contract terms could prejudice its competitive standing. So weighing all the Hubbard factors, the Court finds that justice requires that the subcontract remain under seal. See Metlife, Inc., 865 F.3d at 666.

ii.    PAE-Labat's Articles of Incorporation

Turning to PAE-Labat's Articles of Incorporation (the AOI), the Court can deduce no reason to maintain the seal.

12

The AOI, like the subcontract, were filed with the court to support allegations in the complaint, and the filing is therefore a judicial record.  No federal statute establishes that the AOI should remain under seal.  And all Hubbard factors either weigh in favor of lifting the seal or are neutral: the public has an interest in accessing False Claims Act records (factor one); the AOI are already publicly available through Virginia's online State Corporation Commission Clerk's Information System (factor two); no one has objected to the AOI's unsealing (factor three); no one has a privacy interest in the AOI or would be prejudiced by their disclosure (factors four and five); and while the AOI were incorporated into the complaint's allegations, the Court never relied on them (factor six).  The Court thus grants Dow's motion to unseal PAE-Labat's AOI.

### D.  Other Miscellaneous Sealed Records

The record in this case contains four remaining categories of sealed items— (1) administrative docket entries documenting, for example, that the Court received the filing fee from relators, (2) a minute order directing the United States to notify the Court whether it intends to intervene, (3) relators' motion to seal the case, [ECF No. 1], and (4) the Court's order granting relators' motion to seal, [ECF No. 2].  Because these records were either created by the Court or, in the case of relators' motion to seal, sought the Court's adjudication, they are judicial records. Moreover, no federal statute mandates that they remain under seal and no party objects to their unsealing.  After weighing the Hubbard factors, the Court concludes that justice does not require that they remain under seal.  See Metlife, Inc., 865 F.3d at 666.  The Court therefore grants Dow's motion to unseal these remaining records.

### CONCLUSION

For the reasons discussed in this Memorandum Opinion, the court dismisses without prejudice [3] the complaint for failure to prosecute, and denies in part, and grants in part [54]

relator's motion to unseal the record.  The Court orders that HC2, Inc.'s subcontract, [ECF No. 1-2] shall remain under seal, but that the clerk shall unseal all other records in this case.

A separate order will accompany this opinion.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:  <u>April 30, 2026</u>